UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

---

CIVIL ACTION NO. 2001-CV-10408-RCL

THE ESTATE OF JOHN L. MCINTYRE
by EMILY MCINTYRE AND CHRISTOPHER MCINTYRE,
in their capacity as CO-ADMINISTRATORS of the
ESTATE OF JOHN L. MCINTYRE,
Plaintiff

V.

UNITED STATES OF AMERICA,
H. PAUL RICO, JOHN MORRIS, JOHN J. CONNOLLY,
RODERICK KENNEDY, ROBERT FITZPATRICK, JAMES RING,
JAMES GREENLEAF, JAMES AHEARN,
KEVIN WEEKS, JAMES BULGER, STEPHEN FLEMMI,
and JOHN DOES 1-50,
Defendants,

---

CIVIL ACTION NO. 2001-CV-10433-RCL

PATRICIA DONAHUE,
Individually, and in her capacity as ADMINISTRATRIX of the
ESTATE OF MICHAEL J. DONAHUE, MICHAEL T. DONAHUE,
SHAWN DONAHUE, and THOMAS DONAHUE,
Plaintiffs

V.

UNITED STATES OF AMERICA,
FEDERAL BUREAU OF INVESTIGATION,
JOHN J. CONNOLLY, JR., JOHN M. MORRIS, LAWRENCE SARHATT,
and ROBERT FITZPATRICK,
Defendants

---



CIVIL ACTION NO. 2001-CV-11346-RCL

THE ESTATE OF EDWARD BRIAN HALLORAN,
by PATRICIA MARIE MACCARELLI,
as ADMINISTRATRIX of the ESTATE OF EDWARD BRIAN HALLORAN,
Plaintiff

V.

THE UNITED STATES OF AMERICA,
acting through the DEPARTMENT OF JUSTICE
and the FEDERAL BUREAU OF INVESTIGATION,
H. PAUL RICO, JOHN MORRIS, JOHN J. CONNOLLY,
RODERICK KENNEDY, ROBERT FITZPATRICK,
JAMES RING, JAMES GREENLEAF, JAMES AHEARN,
KEVIN WEEKS, JAMES BULGER, STEPHEN FLEMMI,
and JOHN DOES 1-50,
Defendants

---

CIVIL ACTION NO. 2002-CV-11312-RCL

SANDRA CASTUCCI,
Individually and in her capacity as ADMINISTRATRIX
of the ESTATE OF RICHARD J. CASTUCCI,
DENISE CASTUCCI, RICHARD J. CASTUCCI, JR.,
BRIAN CASTUCCI, AND DENISE CASTUCCI INELLO,
Plaintiffs

V.

UNITED STATES OF AMERICA,
JOHN J. CONNOLLY, JR., JOHN M. MORRIS,
JAMES J. BULGER, STEPHEN J. FLEMMI, JOHN V. MARTORANO,
and JOHN DOES 1-50,
Defendants

---

CIVIL ACTION NO. 2002-CV-10464- RCL

LAWRENCE A. WHEELER AND PATRICIA J.(WHEELER) LANGHOLZ,
Individually and as SPECIAL ADMINISTRATORS of
THE ESTATE OF ROGER M. WHEELER,
PAMELA (WHEELER) NORBERG, DAVID B. WHEELER, AND
MARK K. WHEELER,
Plaintiffs

V.

UNITED STATES OF AMERICA,
JOHN J. CONNOLLY, JR., JOHN M. MORRIS, H. PAUL RICO,
ROBERT FITZPATRICK, JAMES A. RING, JAMES GREENLEAF,
JAMES AHEARN, JAMES J. BULGER, STEPHEN J. FLEMMI,
JOHN V. MARTORANO and JOHN DOES 1-50,
Defendants

---

CIVIL ACTION NO. 2002-CV-11791-RCL

ANNA M. LITIF,
Individually and in her capacity as ADMINISTRATRIX of the
ESTATE OF LOUIS R. LITIF,
LUANNE LITIF and LEE LITIF,
Plaintiffs

V.

UNITED STATES OF AMERICA,
FEDERAL BUREAU OF INVESTIGATION,
JOHN J. CONNOLLY, JR., JOHN M. MORRIS,
LAWRENCE SARHATT,
Defendants

---

CIVIL ACTION NO. 2002-CV-11802-RCL

EDWARD BENNETT,
as ADMINISTRATOR of the ESTATE OF WILLIAM FREDERICK BENNETT,
Plaintiff

V.

UNITED STATES OF AMERICA,
FEDERAL BUREAU OF INVESTIGATION and H. PAUL RICO,
Defendants

---

CIVIL ACTION NO. 2002-CV-11911-RCL

THE ESTATE OF DEBRA DAVIS BY OLGA DAVIS
in her capacity as ADMINISTRATRIX of the ESTATE OF DEBRA DAVIS,
Plaintiff

V.

THE UNITED STATES OF AMERICA,
H. PAUL RICO, JOHN MORRIS, JOHN CONNOLLY,
LAWRENCE SARHATT, ROBERT FITZPATRICK,
and
JOHN DOES 1-50,
Defendants

---

ORDER ON

THE MOTION FOR A PROTECTIVE ORDER BY THE UNITED STATES,

THE OPPOSITION OF THE PLAINTIFFS TO THE MOTION FOR A
PROTECTIVE ORDER BY THE UNITED STATES,

THE MOTION FOR LEAVE TO FILE A REPLY BRIEF
BY THE UNITED STATES,

AND

## THE OPPOSITION OF THE PLAINTIFFS TO THE MOTION FOR LEAVE TO FILE A REPLY BRIEF BY THE UNITED STATES,

AND

## REPORT AND RECOMMENDATION REGARDING *SUA SPONTE* HEARING ON DISMISSAL OF CERTAIN CLAIMS

---

ALEXANDER, M.J.,

For the reasons set forth more fully below, the Motion of the United States for a Protective Order is ALLOWED IN PART and DENIED IN PART.   The Motion of the United States for Leave to File a Reply Brief is DENIED.[1]

This Court further FINDS that some of the plaintiffs present complaints with claims that appear to fail to state claims upon which relief can be granted and, accordingly, RECOMMENDS that the District Court consider holding a hearing in accordance with the rules set forth in <u>Clorox Co. Puerto Rico v. Proctor & Gamble</u>

---

[1] In denying the motion for leave to file a reply brief, the Court is not persuaded that such a reply is necessary given the pleadings submitted by the parties.  Those pleadings did not illuminate the salient issue here, whether the discovery requested by the plaintiffs is sufficiently related to the defense of qualified immunity.  Moreover, it is not clear that the party moving for leave, the United States, complied with the obligations imposed upon it by the Local Rules of this District which, *inter alia*, require that counsel for all parties confer in good faith and attempt to limit the issues of disagreement prior to filing any discovery motion.  L. R. 37.1   Future violation of the Local Rules or any obligation imposed by the Federal Rules of Civil Procedure shall result in denial of the motion and the imposition of sanctions.

Comm.Co., 228 F.3d 24 (1st Cir. 2000), and <u>Wyatt v.City of Boston</u>, 35 F.3d 13

(1st Cir. 1994), on whether such claims should be dismissed pursuant to Fed. R.

Civ. P. 12 (b)(6).

## RELEVANT BACKGROUND

The instant cases present the latest legal wranglings in a sordid and sad saga

that devolves from the axis between former agents of the premiere federal law

enforcement agency, the Federal Bureau of Investigation ("FBI"), and notorious

thugs, including James "Whitey" Bulger and Stephen "The Rifleman" Flemmi, and

their organized crime enterprise, the Winter Hill Gang ("WHG").   Aside from

their successes in the criminal underworld, Messrs. Bulger and Flemmi were stars

in their roles as "top echelon" confidential informants to the FBI, providing

information to the government about the criminal acts of others, most notably,

WHG's direct competitor, La Cosa Nostra ("LCN").[2]   Whether "Faustian

---

[2]Throughout much of the time in which the events alleged in the various complaints at issue here took place, the New England organized crime market was dominated by the LCN and the Patriarca family, both of which have long been acquainted with the federal courts in this circuit.  *See generally,* <u>United States v. Marino</u>, 277 F.3d 11 (1st Cir. 2003).  It is alleged that defendants Bulger and Flemmi shared antipathy toward the LCN, and a mutual and perhaps unique interest in seeing it destroyed.  *See* <u>United States v. Salemme</u>, 91 F. Supp.2d 141, 149 (D. Mass. 1999).  The WHG targeted the LCN's control over the market, often using its relationship with the FBI to advance its entreprenurial agenda.  Despite his animus toward the LCN, Mr. Flemmi was eligible for "membership" in that organization and had a partnership with "Cadillac" Frank Salemme, who lead one faction of the Patriarca empire through internecine fighting worthy of Shakespeare's imagination.  Mr. Flemmi apparently used his relationships with Mr. Salemme and others to gather incriminating, often dramatic, evidence against LCN figures, including Raymond L.S. Patriarca, Raymond J. Patriarca, Genarraro Anguilo, Joseph

bargain," *see* United States v. Flemmi, 225 F.3d 78, 80 (1ˢᵗ Cir. 2000), *cert.*

*denied*, 531 U.S. 1170 (2001), or deal with the Devil, *see* Amanda J. Schreiber,

*"Dealing with the Devil: An Examination of the FBI's Troubled Relationship with*

*its Confidential Informants,"* 34 Colum. J. L & Soc. Probs. 301 (2001), alliances

between criminal informants and law enforcement authorities are age old and

allegedly now endemic in the criminal justice system.

The complicated relationships between the defendant agents and notorious

criminal actors here spanned decades, but were clandestine affairs until exposed

by the extensive hearings held in this District in relation to the prosecution of

"Cadillac" Frank Salemme. See generally, United States v. Salemme, 91 F.

Supp.2d 141 (D. Mass. 1999), *rev'd in part*, Flemmi, 225 F.3d 78 (1ˢᵗ Cir. 2000),

*cert. denied*, 531 U.S. 1170 (2001). That decision, however, forms the foundation

of the significant and serious allegations set forth in the complaints of several of

---

Russo, Vincent Ferrara, Robert Carrozza, and eventually, Mr. Salemme himself. The FBI used
that evidence to secure an array of convictions that eviscerated the LCN's control over the
Boston area market. *See generally*, id. at 149-54. For those who yearn for additional details
about the LCN's activities and legal battles with law enforcement, there is an abundance of
information available in various reported decisions. *See e.g.*, Marino, *supra*; United States v.
Barone, 114 F.3d 1284 (1ˢᵗ Cir. 1997); United States v. Angiulo, 57 F.3d 38 (1ˢᵗ Cir. 1995);
United States v. Carrozza, 4 F.3d 70 (1ˢᵗ Cir. 1993); United States v. Patriarca, 948 F.2d 789 (1ˢᵗ
Cir. 1991); United States v. Zannino, 895 F.2d 1 (1ˢᵗ Cir. 1990); United States v. Angiulo, 847
F.2d 956 (1ˢᵗ Cir. 1988); Salemme, *supra*.

the plaintiffs here.[3]

The plaintiffs in these related but unconsolidated cases are family members of various decedents believed to have been murdered by, or upon orders from, Messrs. Bulger, Flemmi, Kevin Weeks and/or John Martorano (or others associated with the WHG).[4]   The plaintiffs contend that the decedents' deaths were caused by disclosures the agents made to WHG members that identified the decedents as witnesses cooperating with law enforcement personnel in ongoing governmental investigations into WHG activities.   The plaintiffs assert various claims, including those brought pursuant to Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 397 (1971), by operation of the First, Fourth and Fifth Amendments to the United States Constitution; the Federal Tort Claims Act, 28 U.S.C. § 2671;[5] the Civil Rights Act of 1871, 42 U.S.C. § 1983;

---

[3]The Court notes that the First Circuit expressly indicated that it accepted the facts as found by the District Court purely *arguendo*, "without critical examination of the supportability of the court's findings."  Flemmi, 225 F.3d at 81.

[4]The plaintiffs' names and the capacities in which they bring suit are set forth in the caption.  For the sakes of simplicity and ease, the Court shall refer to the plaintiffs generally and collectively in this Order unless a more specific definition is necessary.

[5]It is axiomatic that the United States is immune from suit by operation of the doctrine of sovereign immunity unless the United States waives that immunity and consents to be sued.  *See, e.g.,* United States v. Sherwood, 312 U.S. 584, 586 (1941); United States v. Thompson, 98 U.S. 486, 489 (1978).  As such, a federal court is without subject matter jurisdiction over claims against the federal sovereign absent a waiver of sovereign immunity.  Hydrogen Tech. Corp. v. United States, 831 F.2d 1155, 1161 (1st Cir. 1987).  The Federal Tort Claims Act, 28 U.S.C. § 1346(b), operates to waive sovereign immunity for certain tort claims in certain circumstances,

the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C.

1961 *et seq.;* and the Commonwealth's Wrongful Death Act, MASS. GEN.

LAWS, Chapter 229.[6]   The defendants named in the various suits include Messrs.

Bulger, Flemmi, Kevin Weeks and John Martorano (the "criminal defendants");

the United States ("the government defendant"); and the FBI and various former

agents of the FBI, including the individual defendants John J. Connolly, Jr., H.

Paul Rico, John Morris, Roderick Kennedy, Robert Fitzpatrick, James Ring, James

Greenleaf, Lawrence Sarhatt and James Ahearn (collectively, "the FBI

defendants").[7]   Virtually all of the FBI defendants assert they are entitled to

---

but that waiver is a limited one. <u>Muniz-Rivera v. United States</u>, — F.3d —, 2003 WL 1793051, *2 (1st Cir.). The United States has not waived its immunity for constitutional violations, *see* 28 U.S.C. § 2679(b)(1-2), or for any tort arising from a decision made in the discretion of the executive or administrator according to that individual's best judgment. <u>Dalehite v. United States</u>, 346 U.S. 15, 34 (1953). Further, the "FTCA exempts intentional torts from its sovereign immunity but expressly allows claims against the United States for claims of 'assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution' arising out of 'acts or omissions of investigative or law enforcement officers of the United States Government.'" <u>Abreu-Guzman v. Ford</u>, 241 F.3d 69, 75 (1st Cir. 2001), *citing* 28 U.S.C. § 2680(h). By limiting its waiver in this way, the United States effectively prevents federal courts from "judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic or political policy." <u>United States v. S.A. Empresa de Viacao Aerea Rio Grandense</u>, 467 U.S. 797, 814 (1984). *See also* <u>United States v. Gaubert</u>, 499 U.S. 315, 323 (1991).

[6]Also extant are certain plaintiffs' claims for attorneys' fees pursuant to the Equal Access to Justice Act and the Massachusetts common law torts.

[7]Also named are various "John Doe" defendants.

qualified immunity.[8]

After extensive hearings earlier in the litigation, the District Court (Lindsay, J.) entered orders regarding confidentiality of information and materials produced during discovery and discovery itself.   In relevant part here, those orders also limited the first phase of discovery to issues related to the claims of qualified immunity (discussed *infra*).

The instant motions arise from the plaintiffs' attempts to conduct discovery through an omnibus request for production of documents.  The request sets forth thirty-five categories of documents which appear to seek the full gamut of conceivable information related to the allegations in the complaint.  The United States moves for a protective order shielding it from responsive production, contending that the plaintiffs fail to abide by the District Court's Order limiting initial discovery to the issue of qualified immunity.[9]

The resolution of the instant motions therefore turn on an analysis of the nexus between the doctrine of qualified immunity and the plaintiffs' Bivens,

---

[8]Defendants Connolly, Fitzpatrick, Rico, Kennedy, Greenleaf, Sarhatt and Ring have asserted the defense.  Defendant Ahearn has not, but has reserved his right to plead additional affirmative defenses.  Defendant Morris does not appear to have asserted qualified immunity.

[9]The government's opposition is more focused on the suggestion that the documents sought related to crimes other than those at issue as "claims or defenses" in the complaints and answers.  It is not necessary to reach that issue here.

FTCA, and wrongful death claims.  Before turning to that salient inquiry, it is

necessary to address some predicate legal issues.

### The Section 1983 claims

"Section 1983 provides a cause of action for a plaintiff to seek money

damages from a defendant who acted under color of state law to deprive plaintiff

of a right guaranteed by the Constitution or by federal law."[10]  Kelley v. LaForce,

288 F.3d 1, 6 (1st Cir. 2002) (citations omitted).  *See also* Kauch v. Dep't for

Children, Youth and their Families, 321 F.3d 1 (1st Cir. 2002), *citing* Watterson v.

Page, 987 F.2d 1, 7 (1st Cir.1993).    Because Section 1983 cannot form the basis

of an action predicated upon actions taken by individuals acting under color of

federal law, Dist. of Columbia v. Carter, 409 U.S. 418, 424-25 (1973); Bivens, 403

U.S. at 398 n.1; Rogers v. Vicuna, 264 F.3d 1, 4 (1st Cir. 2001)(citations omitted),

even if the state actors are operating at the behest of federal officials, Andrade v.

Chojnacki, 65 F. Supp.2d 431, 451-52 (W.D. Tex. 1999), the Court FINDS that

such claims are unlikely to be viable and therefore RECOMMENDS that the

District Court consider a *sua sponte* order giving the plaintiffs  notice of the issue

---

[10]"Section 1983, originally § 1 of the Ku Klux Klan Act of 1871, 'creates an action for damages and injunctive relief for the benefit of citizens and other persons against those persons responsible for the violation of "certain rights secured by the Constitution and laws.'"  Singh v. Blue Cross/Blue Shield of Massachusetts, Inc., 308 F.3d 25, 34 n.8 (1st Cir. 2002) (internal11 quotation marks and citations omitted).

and an opportunity to be heard on why the Section 1983 claims should not be

dismissed for failure to state a claim upon which relief can be granted.[11]  *See*

Clorox Co. Puerto Rico v. Proctor & Gamble Comm. Co., 228 F.3d 24, 30 (1st Cir.

2000) and citations therein; Wyatt v. City of Boston, 35 F.3d 13, 14-15 (1st Cir.

1994).

### *The RICO Claims*

Because 1) governmental entities cannot form the criminal intent requisite

to predicate RICO offenses, Pedrina v. Chun, 97 F.3d 1296, 1300 (9th Cir. 1996),

*cert. denied*, 520 U.S. 1269 (1997); Chojnacki, 65 F. Supp.2d at 449; 2) sovereign

immunity is not overcome by RICO, McMillan v. Dep't of Interior, 907 F. Supp.

322, 326 (D. Nev. 1995), *aff'd* 87 F.3d 1320 (9th Cir. 1996), *cert. denied*, 519 U.S.

1132 (1997); and 3) neither the United States nor federal agencies are indictable or

otherwise subject to state or federal prosecution and therefore not able to engage

in racketeering conduct,  Keller v. Central Bank of Nigeria, 277 F.3d 811, 820 (6th

Cir. 2002) and cases cited therein; McNeily v. United States, 6 F.3d 343, 350 (5th

Cir. 1993), the District Court dismissed the RICO claims naming the United States

and/or FBI as defendants.   Donahue v. Fed. Bureau of Investigation, 204 F.

---

[11]It appears that the only complaint in which Section 1983 claims are set forth is that
brought by the plaintiffs in Davis v. United States, et als., Civil Action #2002CV11911-RCL.

Supp.2d 169, 172-74 (D. Mass. 2002).  This Court notes that various other complaints also plead RICO claims against individual FBI defendants.[12]  Although such defendants might be proper targets of a RICO claim, Brown v. Nationsbank Corp., 188 F.3d 579, 587 (5th Cir. 1999), *cert. denied*, 522 U.S. 1047 (2000), they appear to falter because the plaintiffs identify only personal injuries for which the statute affords no remedy from any defendant.  Andrade, 65 F. Supp.2d at 449-50.  As such, they too appear subject to dismissal pursuant to Fed. R. Civ. P. 12(b)(6).[13]  Thus, this Court RECOMMENDS that the District Court consider giving the plaintiffs notice of the issue and an opportunity to be heard on whether those claims should also be dismissed for failure to state a claim upon which relief can be granted.  *See* Clorox Co. Puerto Rico, *supra*; Wyatt, *supra*.

### The *Bivens* claims based on the Right to Access the Courts.

In light of the Order by Lindsay, J., no further action need be taken on the Bivens claims.

_____

[12]It appears that the plaintiffs in Donahue, et als. v. United States, et als., #2001CV10433-RCL, and in Litif, et als. v. United States, et als., #2002CV11791-RCL, set forth RICO claims against individual FBI agents.

[13]The Court notes that certain plaintiffs appear to recognize this rule and attempt to plead around it.  For example, the plaintiffs in Donahue set forth a detailed complaint based on Judge Wolf's opinion and reiterate the circumstances surrounding the death of their decedents.  In so doing, they attempt to transmorgify the decedent's death and personal injuries into claims for property damage and loss.  *See* Donahue Complaint at ¶¶ 129-267.  It is not clear to this Court that such a theory is proper for a civil RICO claim.

## ANALYSIS

### *The Doctrine of Qualified Immunity*

In turning to the salient inquiry here, the Court notes that the doctrine of

qualified immunity is a judicial attempt to balance two critical but often

conflicting concerns:

> On the one hand, "in situations of abuse of office, an action for damages
> may offer the only realistic avenue for vindication of constitutional
> guarantees." Harlow v. Fitzgerald, 457 U.S. 800, 814, 102 S.Ct. 2727,
> 2736, 73 L.Ed.2d 396 (1982) . . . , and Bivens v. Six Unknown Named
> Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 410, 91 S.Ct.
> 1999, 2011, 29 L.Ed.2d 619 (1971); *see* Davis v. Scherer, 468 U.S. 183,
> 195, 104 S.Ct. 3012, 3020, 82 L.Ed.2d 139 (1984). On the other hand, such
> suits frequently run against the innocent, burdening officials and chilling
> the conscientious execution of their duties. Harlow, 457 U.S. at 814, 102
> S.Ct. at 2736; *see* Gray v. Bell, 712 F.2d 490, 496-97 (D.C. Cir. 1983), *cert.
> denied*, 465 U.S. 1100, 104 S.Ct. 1593, 80 L.Ed.2d 125 (1984); *cf.* Spalding
> v. Vilas, 161 U.S. 483, 498, 16 S.Ct. 631, 637, 40 L.Ed.2d 780 (1986).

Halperin v. Kissinger, 807 F.2d 180, 183 (D.C. Cir. 1986).

In undertaking this balancing, the doctrine "provides a safe harbor for a

wide range of mistaken judgments," Hatch v. Dep't for Children, Youth and Their

Families, 274 F.3d 12, 19 (1st Cir. 2001), thereby balancing the need to vindicate

constitutional rights against the need to protect public officials from litigation that

could inhibit the discharge of their duties. Savard v. Rhode Island, 320 F.3d 34, 36

(1st Cir. 2003), *citing* Anderson v. Creighton, 483 U.S. 635, 638 (1987).   The

doctrine operates to "specially protect[] public officials from the specter of damages liability for judgment calls made in a legally uncertain environment," Savard, 320 F.3d at 36, *citing* Ryder v. United States, 515 U.S. 177, 185 (1995), and affords "'an entitlement not to stand trial or face the other burdens of litigation'. . . ."  Kauch, 321 F.3d at 4, *citing* Saucier v. Katz, 533 U.S. 194, 200 (2001), *quoting* Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).

Because the doctrine operates to limit the circumstances in which a defendant may be held liable, the federal courts are instructed to address claims of qualified immunity in the initial stages of a lawsuit.  As the Supreme Court held:

> Harlow thus recognized an entitlement not to stand trial or face the other burdens of litigation, conditioned on the resolution of the essentially legal question whether the conduct of which the plaintiff complains violated clearly established law. The entitlement is an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.

Mitchell, 472 U.S. at 526.

Thus, discovery is to be limited or stayed until the threshold question of immunity is answered.  *See* DiMartini v. Ferrin, 889 F.2d 922, 926 (9th Cir. 1989), *citing* Harlow, 457 U.S. at 818, *opinion amended on other grounds by* 906 F.2d 465 (9th Cir. 1990), *cert. denied*, 510 U.S. 1204 (1991).[14]

---

[14]In the context of cases in which qualified immunity is at issue, in accordance with the Supreme Court's holding in Harlow, the courts proscribe discovery pending resolution of the

In light of the foregoing and as noted previously, the District Court entered orders phasing the discovery in these cases.  Per those orders, the first phase of litigation permits discovery which is limited to the issue of qualified immunity. The critical issue therefore is whether the plaintiffs' request for production is within the scope of first phase discovery:  even if the discovery seeks information which might be discoverable in the context of the larger allegations but which is not relevant to the issues of qualified immunity, the requests are not proper at this time.

In assessing the propriety of the discovery sought, the Court must look to the nature of qualified immunity.  The First Circuit instructs that the trial courts are to employ a three-part test in determining whether an official is entitled to qualified immunity. *See, e.g.,* Suboh v. Dist. Attorney's Office of the Suffolk Dist., 298 F.3d 81, 90 (1st Cir. 2002). *See also* Wilson v. Layne, 526 U.S. 603, 609 (1999); County of Sacramento v. Lewis, 523 U.S. 833, 841 n.5 (1998); Siegert v. Gilley, 500 U.S. 226, 232 (1991). As the court set forth in Kauch,

---

qualified immunity issues until such time as the trial judge can answer the legal question of whether the acts alleged by the plaintiff give rise to a constitutional violation that was clearly established at the time of the alleged violation. *See* Harlow, 457 U.S. at 818. *See also* Kauch, 321 F.3d at 4 (noting that the doctrine of qualified immunity must be considered early in the litigation) (citations and quotations omitted).  This rule is consistent with the courts' efforts to control and alleviate the fear of a "primary evil" – broad discovery that would "implicate separation of powers concerns" and disrupt government officials and functions.  Smith v. Nixon, 807 F.2d 197, 200 (D.C. Cir. 1986)(Scalia, J.) (citations omitted).

First, a court considers whether "the plaintiff's allegations, if true, establish a constitutional violation." <u>Suboh</u>, 298 F.3d at 90.  Second, we determine whether the right was clearly established at the time of the alleged violation. <u>Id</u>.  Finally, we determine "whether a reasonable officer, similarly situated, would understand that the challenged conduct violated that established right." <u>Id</u>.  The answer to each inquiry must be positive to overcome a defense of qualified immunity. <u>Hatch</u>, 274 F.3d at 20.

<u>Kauch</u>, 321 F.3d at 4.

In the first inquiry, the court must look to the complaint and consider, as a matter of law, "whether or not the alleged facts establish a constitutional violation[.]"[15] <u>Id.</u>, *citing* <u>Hatch</u>, 274 F.3d at 20.  *See also* <u>Hope v. Pelzer</u>, 536 U.S. 730, 122 S.Ct. 2508, 2513 (2002); <u>Saucier</u>, 533 U.S. at 201; <u>Wilson</u>, 526 U.S. at 609.  The burden is on the plaintiff to "specify the rights that have been interfered with" by the defendants, <u>Kauch</u>, 321 F.3d at 4, *citing* <u>Frazier</u>, 957 F.2d at 930, and to demonstrate that the defendant's conduct can establish a constitutional violation.  <u>Id</u>.  Where a court concludes that the plaintiff's allegations, if established, could not yield a finding that there was a violation of constitutional rights, the inquiry ends.  <u>Kauch</u>, 321 F.3d at 4, *citing* <u>Saucier</u>, 533 U.S. at 201.

Although this inquiry is a question of law, the First Circuit suggests that

---

[15]The use of "generalized definitions" of constitutional rights is not appropriate in pleadings in which the qualified immunity doctrine obtains. <u>Anderson</u>, 483 U.S. at 639. *See also* <u>Frazier v. Bailey</u>, 957 F.2d 920, 929-30 (1st Cir. 1992) (holding that the plaintiff's allegations of an abstract due process liberty interest in family relationships and integrity was not sufficient).

where the answer to the inquiry of whether there was a violation of constitutional rights depends "on a kaleidoscope of facts not yet fully developed," it is "an uncomfortable exercise" for the court to begin with such an analysis. Dirrane v. Brookline Police Dept., 315 F.3d 65, 69-70 (1st Cir. 2002). In such cases, the court has questioned whether the rule of Saucier should be applied, see id. ("It may be that Saucier was not strictly intended to cover the latter case."), but nevertheless engages in the analysis. See id. at 70. This Court is thus constrained similarly.

The second step is to ask "whether that right was clearly established at the time of the alleged violation." Savard, 320 F.3d at 37, citing Conn v. Gabbert, 526 U.S. 286, 290 (1999). This, too, is a question of law.[16] Singh, 308 F.3d at 35. "The purpose of this step is 'to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful.'" Savard, 320 F.3d at 37, citing Saucier, 533 U.S. at 206. See also Hope, 122 S.Ct. at 2516-18; Anderson, 483 U.S. at 638-40; Suboh, 298 F.3d at 90. This time sensitive inquiry, Hatch, 274

---

[16]"One tried and true way of determining whether [a] right was clearly established ... is to ask whether existing case law gave the defendants fair warning that their conduct violated the plaintiff's constitutional rights." Id, citing Suboh, 298 F.3d at 93. Thus, the inquiry is clearly one of law, and although not one devoid of factual influences, the courts are cautioned against requiring that the officials be presented with factual scenarios identical to case law that unambiguously afford notice of potential violations. As the Supreme Court recently explained, "officials can still be on notice that their conduct violates established law even in novel factual circumstances." Hope, 122 S.Ct. at 2516.

F.3d at 22, is necessary because "[q]ualified immunity is available to the defendants if, at the time of the alleged violations, the law was not clearly established." *See* Savard, 320 F.3d at 37, *citing* id.

The third and final step in the qualified immunity analysis is the inquiry into whether similarly situated, "objectively reasonable" law enforcement officials like the agents at issue here would believe that their conduct was lawful in light of clearly established law. Savard, 320 F.3d at 37; Suboh, 298 F.3d at 95; Swain v. Spinney, 117 F.3d 1, 9 (1st Cir. 1997). Put another way, the question is whether a reasonable person would (or should) have known that his conduct violated clearly established statutory or constitutional rights. *See* Harlow, 457 U.S. at 818. In answering this question, courts are not to look at evidence of the agents' subjective intent because such evidence is considered irrelevant to the query of objectivity. Abreu-Guzman, 241 F.3d at 73, *citing* Crawford-El v. Britton, 523 U.S. 574, 588 (1998). Rather, courts are to look to clearly established law as the controlling reference for reasonableness. Harlow, 457 U.S. at 818. *See also* Davis v. Scherer, 468 U.S. 183, *r'hg denied*, 468 U.S. 1226 (1984).

Thus, "[a] government employee is immune to damages where a reasonable official could believe (the test is objective), albeit mistakenly, that his conduct did not violate" the Constitution. Dirrane, 315 F.3d at 69, *citing* Harlow, 457 U.S. at

818-19. Similarly, "[i]mmunity exists even where the abstract right invoked by the plaintiff is well-established, so long as the official could reasonably have believed on the facts that no violation existed." Id., citing Suboh, 298 F.3d at 90; Swain, 117 F.3d at 9-10. Simply put, "even state actors who commit constitutional violations may be entitled to qualified immunity." Camilio-Robles v. Hoyos, 151 F.3d 1, 6 (1st Cir. 1998), cert. denied, 525 U.S. 1105 (1999).

Although this third inquiry is also a question of law, Elder v. Holloway, 510 U.S. 510, 516 (1994), it is one that is often fact specific. Swain, 117 F.3d at 9-10. See also Jarrett v. Yarmouth, 309 F.3d 54, 61 (1st Cir. 2002) (providing that "[w]hile courts normally determine whether qualified immunity is available prior to trial, there are cases where a jury needs to resolve crucial factual questions before a court can resolve the qualified immunity question."), citing Kelley, 288 F.3d at 7; Franco-de Jerez v. Burgos, 876 F.2d 1038, 1044 (1st Cir. 1989). In such cases, summary judgment on the issue of qualified immunity is inappropriate. Kelley, 288 F.3d at 7. See also Suboh, 298 F.3d at 90 ("The reasonableness inquiry is also a legal determination, although it may entail preliminary factual determinations if there are disputed material facts (which should be left for a jury).")(citation omitted). And, as the First Circuit has repeatedly recognized, the answer to the objectively reasonable question "will often require examination of

the information possessed by the defendant officials." <u>Savard</u>, 320 F.3d at 37

(citations omitted). *See also* <u>Bilida v. McCleod</u>, 211 F.3d 166, 174 (1st Cir.

2000); <u>Sheehy v. Town of Plymouth</u>, 191 F.3d 15, 19 (1st Cir. 1999); <u>McBride v.

Taylor</u>, 924 F.2d 386, 389 (1st Cir. 1991); <u>Floyd v. Farrell</u>, 765 F.2d 1, 6 (1st Cir.

1985).

It is against this backdrop that the Court considers the plaintiffs' request for

production.

In passing upon the discovery desired, the Court is not persuaded that any of

the material sought is necessary for the parties to address the first two prongs of

the qualified immunity test.   Similarly, the Court is not persuaded that the bulk of

the discovery requested implicates the third inquiry, i.e., that which asks whether

an objectively reasonable agent would believe that his conduct was lawful.   Some

of the requests, however, appear designed to lead to the discovery of admissible

evidence regarding the defendants' beliefs about their conduct.[17]   Notwithstanding

---

[17]The material the Court places within this limited vein of requested discovery are the following:

A.   Documents related to governmental guidelines, policies, and protocols for handling informants, informant files, the handling and audit of informant files, the standards employed for auditing informant or organized crime files, the enforcement of informant guidelines, the training provided to agents regarding the handling of informants and in organized crime matters [*see* Request No. 1 (a-f)];

B.   Any and all mission statements adopted by the FBI [*see* Request No. 1 (g)];

C.   FBI manuals and guidelines setting forth the responsibilities and duties of agents,

an immaterial subjective focus, <u>Abreu-Guzman</u>, *supra*, such materials also may be related to the analysis of whether a similarly situated, objectively reasonable agent would have known that his conduct was violative of constitutional rights and protections.

Accordingly, to the extent that the motion for a protective order seeks an order precluding the discovery of the categories of documents and things referenced in note 17 of this Order, the motion is DENIED. The United States is directed to produce such materials to counsel for the plaintiffs within ten (10) days of receipt of this Order.[18]  To the extent that the motion for a protective order seeks an order precluding discovery of documents and things not set forth in note

---

<div style="margin-left:2em">

including the "FBI Manual of Instructions," the "FBI Guidelines," and the "FBI Guidelines Regarding the Handling of Informants," [*see* Request No. 1 (h)];

D.   Disciplinary files and records regarding any claim of constitutional violation arising from the acts, omissions, conduct or work performed by defendants Connolly, Morris, Sarhatt, Fitzpatrick, Kennedy, Ring, Greenleaf, Ahearn, and Rico <u>prior to or contemporaneous with</u> the conduct for which the particular defendant is charged in these cases, [*see* Request No. 2 (f)(emphasis furnished)];

E.   Disciplinary files and records regarding any claim involving or relating to an informant that involves defendants Connolly, Morris, Sarhatt, Fitzpatrick, Kennedy, Ring, Greenleaf, Ahearn, and/or Rico <u>prior to or contemporaneous with</u> the conduct for which the particular defendant is charged in these cases, [*see* Request No. 3 (emphasis furnished)]; and

F.   Any records related to any audit or investigation of the FBI's informant and organized crime programs <u>to the extent that such records also relate directly</u> to the FBI Field Office in Boston <u>and</u> which the conduct of the defendants named in these lawsuits, [*see* Request Nos. 14, 20 (a-b)(emphasis furnished)].

</div>

[18]The Court notes that the government avers that some of the aforementioned documents have been, or are in the process of being, produced.

17, the motion is ALLOWED.

SO ORDERED.


_4/22/03_
Date

United States Magistrate Judge